IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RASHA BYNUM,                          :
                                      :
      Plaintiff,                    : CIVIL NO. 3:CV-06-2272
                                      :
  vs.                                 : (JUDGE VANASKIE)
                                      :
B. THIROWAY, et al.,                  :
                                      :
      Defendants.                   :


M E M O R A N D U M

I.    Introduction

Rasha Bynum, formerly a federal inmate, filed this Bivens[1] civil rights action alleging that while confined at the Schuylkill Federal Correctional Institution in Minersville, Pennsylvania, he was subjected to excessive force and thereafter denied adequate medical treatment in violation of the Eighth Amendment.  Named as Defendants are the following current or former FCI-Schuylkill employees: Senior Office Specialists Brian Thiroway and Robert Schreffler, and Emergency Medical Technician Michael Kabonick.  Presently pending before the Court is Defendants' Second Motion for Summary Judgment.[2]  For the reasons that follow, the motion

---

[1] Bivens v. Six Unnamed Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[2] An earlier motion for summary judgment was denied without prejudice on September 12, 2007, to afford Plaintiff an opportunity to conduct discovery in this matter.  (Dkt. Entry 32.)

will be granted.

II.     Statement of Facts

The following are the undisputed facts as set forth by Defendants.  On October 28, 2004, Defendants Schreffler and Thiroway were assigned to report to the shower area in the Special Housing Unit at FCI-Schuylkill to obtain a radio from Plaintiff.  Earlier in the day, the Associate Warden had ordered that a radio be removed from Plaintiff, as inmates are generally not permitted to keep personal property while they are confined in disciplinary segregation.  See 28 C.F.R. § 541.21(C)(7). (Dkt. Entry 40, Ex. 1, Thiroway Decl., ¶ 6.)  While Plaintiff does not dispute having a radio in his possession, he does dispute that the Associate Warden issued any such order.  According to Plaintiff, a captain had told him earlier in the day he could keep the radio since he was going to be transferred to administrative segregation.  (Dkt. Entry 44, Pl. Opp'n Br. at unnumbered p. 5.)

Defendants provide the following account of what transpired once they arrived at the SHU.  (Dkt. Entry 40, Exs. 1-4.)[3]  Upon arrival at the shower unit at approximately 3:35 p.m. to confiscate the radio, Schreffler and Thiroway requested Plaintiff to "strip out," but he refused.  To avoid any confrontation, a pat search instead of a visual search was suggested.  While speaking with Plaintiff, Defendants remained standing in the range, i.e., hallway, and Plaintiff

---

[3] Defendants have submitted a copy of a video recording from a security camera that shows the incident within the range outside the shower cell.  (Dkt. Entry 37.)

2

was in the shower cell.

Plaintiff, who was already handcuffed behind his back, then stepped out of the shower cell toward Defendants, and was ordered by Defendants to face the wall opposite the shower cell.  Schreffler then reached around Plaintiff's waist to begin a pat search in the area where the contraband was thought to be located.  (Dkt. Entry 37; Dkt. Entry 40, Ex. 2, Schreffler Decl., ¶ 2.)  During this time, Thiroway was holding Plaintiff's right arm.  (Id., Ex. 1, Thiroway Decl., ¶ 10.)  Defendants claim that Plaintiff suddenly thrust forward toward the wall and turned clockwise toward Thiroway and away from Schreffler.  (Id. at ¶ 11; Ex. 2, Schreffler Decl., ¶ 4.)  A struggle then ensued.  Initially, Plaintiff, who, according to medical records, weighed 255 pounds, careened down range from the security camera recording the incident while in the grasp of Thiroway and Schreffler, who appear to be trying to wrestle him to the ground.  Defendants assert that Plaintiff refused orders to "go to the ground."  (Id., Ex. 1, ¶ 12.)  The video recording appears to show Plaintiff kicking his leg up between Defendant Thiroway's legs.  (Id., ¶ 13.) The group then careens down the range toward both the camera and the range "grill."[4]  Plaintiff with Thiroway and Schreffler hanging on to him slams his head on the bars of the grill.  (Id., ¶ 15.)  The point of impact is not revealed on the video.  After rebounding off the grill, Plaintiff ceased resisting and was taken to the ground, where he was subdued.  According

---

[4] The "grill" is prison slang for a barred entryway with a swinging barred door. (Id., Ex. 1, ¶ 14.)

to Defendants, Plaintiff then began to shout threats of legal and personal retaliation.  (Id., Ex. 1, ¶ 16.)  At this point Defendants began securing Plaintiff's legs, arms and shoulders and Defendant Schreffler called for assistance on his radio.  (Dkt. Entry 40, Ex. 2, Schreffler Decl., ¶ 5.)  The entire episode lasted less than two (2) minutes.  (Dkt. Entry 37.)

Immediately thereafter, Officer Stoshack arrived and assisted with securing Plaintiff.  Defendants Thiroway and Schreffler assisted Plaintiff to his feet, and escorted him through the range doors to the administrative detention side of the SHU.  (Dkt. Entry 37; Dkt Entry 40, Ex. 1, ¶¶ 19, 20; Ex. 2, ¶¶ 6, 7.)  While escorting Plaintiff, Schreffler noticed that Plaintiff was bleeding from his head.  Plaintiff was given a towel and placed in a shower cell. (Id., Ex. 2, ¶ 8.)  Schreffler then notified the medical staff and lieutenant. (Id.)  Following his injury assessment, Plaintiff was placed in the disciplinary segregation section of the SHU.  (Id., Ex. 1, ¶ 21.)  Plaintiff continued to threaten staff later that day, and ultimately received an incident report for threatening bodily harm. (Id., ¶ 22; Ex. 4, Albert Decl., Attach. 2.)

Plaintiff, however, never received an incident report for possession of the radio, and Thiroway does not recall whether a radio was ever found in his possession.  An internal BOP review was conducted regarding the October 28, 2004, use of force, and both Thiroway and Schreffler were cleared of any misconduct.  (Id., ¶ 23; Dkt. Entry 15, Ex. 3.)

While Plaintiff would not initially allow staff to assess his injury, he eventually agreed to and received a physical examination immediately after the injury.  (Dkt. Entry 40, Ex. 3,

4

Kabonick Decl., ¶ 6.) It was noted that he suffered from injuries to the right frontal region of his head that were superficial in nature. (Id., ¶ 7.) There was some bleeding which was controlled with gauze. Plaintiff, who has tightly braided hair, stated that he had a laceration which was covered by his hair. He also complained of jaw pain, but no swelling or deformity was noted. (Id., ¶ 8.)

Two hours later, Plaintiff returned to Health Services and was re-examined. His injury appeared to be the same superficial injury as noted earlier. (Id., ¶ 9.) Some bleeding was evident and again treated with direct pressure and gauze. (Id.) In response to complaints of back and neck pain, Kabonick noted that no trauma was present.

Following Plaintiff's return to his cell, he continued to complain about bleeding from his head. The Clinical Director was notified and informed Plaintiff that he would be sent to Health Services and treated with 2% Xylocaine and epinephrine to restrict the blood flow. (Id., ¶ 11, Attach. 2.) At 7:30 p.m. the same evening, Plaintiff was taken to Health Services. At this time he was seen by Defendant Kabonick and it was noted that the wound appeared "grossly larger" than before. Plaintiff also refused treatment. (Id., ¶ 12, Attach. 2 at 30, 31.)

The following day, Plaintiff was seen for follow-up care with Health Services. It was at this time he reported being assaulted by two officers, and he complained of pain near his neck and left ear. He was diagnosed with a cut to the left side of the head and inflammation around the left ear. He was sutured and told to return to Health Services in a week.

5

In opposing Defendants' motion for summary judgment, Plaintiff simply submits an opposing brief. While he does not set forth a separate Opposing Statement of Material Facts, his brief clearly sets forth challenges to specific statements of fact provided by Defendants. Accordingly, the Court will liberally construe this portion of Plaintiff's brief to be his opposing statement of material facts as required by Middle District of Pennsylvania Local Rule 56.1.

Plaintiff contends that on October 28, 2004, between 3:00 p.m. and 3:35 p.m., an unidentified captain visited his cell and informed him that he was going to be moved from disciplinary segregation to administration detention, and then transferred to another prison. A pat search was later conducted and a radio was found on Plaintiff's person. Plaintiff states that he was told he could have the radio since he was being transferred to administrative detention. (Dkt. Entry 44 at 5.)

Plaintiff offers the following version of the alleged assault. He claims that he did not bolt toward the wall, spin around and then proceed to resist Defendants. It is his contention that Defendants were trying to slam him against the floor and kick his feet out from underneath him. He also contends that it was the Defendants who pushed him down the hallway, and that he never resisted them. (Id. at 6.)

With regard to the medical care claim, Plaintiff argues that Defendant Kabonick failed to clean his head properly, although he admits that he was treated by Kabonick and gauze was used to stop the bleeding. (Id.) Plaintiff basically agrees with the remaining facts as set forth

by Defendants regarding the additional two medical visits on October 28, 2004, and the visit the following day. However, he challenges the treatment provided, arguing that he should have received stitches on October 28, 2004.

The only evidentiary materials submitted by Plaintiff in support of his opposing statements of fact and to contravene those facts as set forth by Defendants are two medical documents - an "Inmate Injury Assessment and Followup Form" dated October 28, 2004, and another dated the following day. Plaintiff also states in his opposition brief that he stipulates to the Court's viewing of the video recording in camera, even though he has not been permitted to view the recording. (Dkt. Entry 44 at 3.) He submits no affidavits or other evidentiary materials to controvert the facts as set forth by Defendants.

III.   Standard of Review

Summary judgment will be granted if the record establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Saldana v Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). In considering a summary judgment motion, inferences from the underlying facts must be viewed in the light most favorable to the non-moving party. P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 852 (3d Cir. 2006).

Rule 56(c) imposes a burden on the moving party to point to an absence of evidence supporting the nonmoving party's case. Celotex Corp. v. Caltrett, 477 U.S. 317, 325 (1986).

7

Once the moving party has met this burden, the burden shifts to the non-moving party, who "may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); Saldana, 260 F.3d at 232.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).  Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. Id.  Even so, "all that is required [by Rule 56(e)2)] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

     In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Further, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Id. at 255.

IV.   Discussion

    A.   Bynum's Excessive Force Claim

The use of excessive force against prisoners constitutes cruel and unusual punishment. Hudson v. McMillian, 503 U.S. 1, 5 (1992). Even though a plaintiff need not allege a serious injury to state a claim, the Eighth Amendment does not protect against reasonable uses of force. Id. at 7, 9-10. "[T]here is no constitutional violation for 'de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" Brooks v. Kyler, 204 F.3d 102, 107 (3d Cir. 2000)(quoting Hudson, 503 U.S. at 9-10). The "use of wanton, unnecessary force resulting in severe pain," however, is actionable. Id. at 109.

In an excessive force claim, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. In evaluating a claim of excessive use of force, the court must take several factors into consideration, such as:

> (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them' and (5) 'any efforts made to temper the severity of a forceful response.'

Brooks, 204 F.3d at 106 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

The undisputed evidence in this case clearly establishes that Defendants Thiroway and

Schreffler did not utilize excessive force in violation of the Eighth Amendment.  Defendants arrived at Plaintiff's SHU cell to confiscate a radio believed to be on Plaintiff's person.  There is no dispute that having such personal property while in disciplinary segregation is not permitted.  See 28 C.F.R. §§ 541.21(C)(7).  It is not a material issue of fact that Plaintiff believed he was able to keep the radio since he was supposed to be transferred.  The undisputed facts are that he was still in disciplinary segregation and he was told that the radio had to be surrendered.

      The video submitted in camera speaks for itself.  It clearly reveals that Defendants arrived at the SHU and stood outside of the cell as they requested and waited for Plaintiff to follow their instructions.  It further reveals how they waited for Plaintiff to step out of the shower so a pat search could be conducted.  The video does not support Plaintiff's allegations of what occurred on the SHU range during the alleged incident.  Rather, it clearly shows Plaintiff lunging toward the wall and spinning around and thereafter resisting Defendants' attempts to control him.  While Plaintiff adamantly argues that it was Defendants who were the aggressors, and who "dragged him" down the hall and attempted to slam him to the floor, the video does not support these allegations.  Rather, it is clear that Plaintiff attempts to kick his leg up between the legs of Defendant Thiroway as Plaintiff resists Defendants.  The video further reveals that it is Defendants that attempted to hold on to Plaintiff as he drags them around the hallway, and not the reverse situation.

      In their declarations Defendants do not dispute that during the episode Plaintiff struck

10

his head on bars of the grill.  While the video does not capture the exact moment of impact, the brief span of time during which the incident occurred, and the taped actions of the parties clearly shows that the injury was not caused by any sadistic or malicious use of force applied by Defendants, but rather resulted due to Plaintiff's own actions and resistance of Defendants' attempts to subdue him.  The video clearly supports Defendants statements that the force applied was only the amount necessary to maintain prison discipline and restore order.

In summary, the video portrays a need for the application of some force.  Plaintiff spun around when a pat of his belt area was attempted.  He is shown kicking between Thiroway's legs.  Plaintiff is a large man, requiring Defendants to wrestle mightily with him to try to subdue him.  Although Plaintiff was handcuffed, it is evident from the video that he posed a threat to officer safety and institutional security.  The incident lasted a matter of seconds.  There is no indication that Defendants punched or kicked Plaintiff after he was taken to the floor.  Plaintiff did not sustain a serious injury.  The head laceration ultimately required only few sutures.  Accordingly, summary judgment is warranted in favor of Defendants on the excessive force claim.  See Clayton v. Clement, Civil No. 06-5426, 2007 WL 4260002 (D. N.J. Nov. 30, 2007) (granting summary judgment in Eighth Amendment excessive force case where video recording of incident precluded a finding that corrections officers used force "maliciously and sadistically"); Brown v. Mravintz, No. Civ. A. 04-30J, 2006 WL 3717417, at *8 n.8 (W.D. Pa. Dec. 14, 2006)(same).

B.  Medical Care Claim

In order to state an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. . ." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does

not give rise to a civil rights cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

In Rouse, 182 F.3d 192 (3d Cir. 1999), the Court of Appeals for the Third Circuit set forth the standard necessary to establish a claim for deliberate indifference to a prisoner's medical needs. The Court stated:

> The Eighth Amendment prohibits the imposition of unnecessary and wanton infliction of pain contrary to contemporary standards of decency. In Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976), the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated. The Court articulated the standard to be used: In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. Id. at 106, 97 S.Ct. 285. Therefore, to succeed under these principles, plaintiffs must demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious.... It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute "deliberate indifference." As the Estelle Court noted: "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind,'" Id. at 105, 97 S.Ct. 285... Deliberate indifference, therefore, requires obduracy and wantonness. . . which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk. . . .

Id. at 197 (some internal citations and quotations omitted).

Defendants do not deny that Plaintiff struck his head during the incident that occurred on October 28, 2004, and sustained an injury. The in camera video reveals that the injury occurred at approximately 3:35:41 p.m. By 3:36:53, Plaintiff had already been provided a towel by Defendants when they noticed he was bleeding, and medical staff had been notified. (Dkt. Entry 37.) The declarations and uncontroverted medical records reveal that Defendant Kabonick examined Plaintiff on three separate occasions on October 28, 2004, following the injury. Plaintiff does not dispute that he was assessed immediately in the SHU. Although he initially refused to cooperate, Plaintiff did allow Kabonick to perform a physical evaluation where only superficial wounds were noted. Kabonick treated Plaintiff by controlling Plaintiff's bleeding with gauze. (Dkt. Entry 3, Kabonick Decl., ¶¶ 3-7 ; Attach. 1). While Plaintiff argues that Defendant did not clean his injury "properly," disagreement with the treatment provided does not provide a basis for relief.

Plaintiff also does not dispute that, in response to his complaints, he was re-examined by Kabonick two (2) hours later. As reflected in the medical records, Kabonick again noted the same superficial injury, and controlled the additional bleeding with direct pressure and gauze. Plaintiff's belief that additional treatment should have been provided again amounts to nothing more than a disagreement with medical treatment and, at best negligence. Later that evening, Plaintiff complained of bleeding. The Clinical Director advised him that his wounds were too

small to suture, and that he would be sent to Health Services for medication. Kabonick saw Plaintiff at 7:30 p.m., the third time that day, and when he examined him, noticed that the wound was "grossly larger." Plaintiff requested stitches, and refused to be treated with medication to control the bleeding. A Medical Treatment Refusal form was filled out, but Plaintiff refused to sign it. It is signed by Defendant Kabonick and witnessed by another prison employee. (Dkt. Entry 40, Kabonick Decl., Attach. 2 at 30, 31.) The following day, Plaintiff was seen in Health Services by a different doctor, diagnosed with a cut to the left side of the head, and received several sutures.

There is no dispute that Plaintiff was provided with medical treatment in response to the injury sustained on October 28, 2004. Plaintiff merely sets forth unsupported, self-serving allegations in his opposition brief and proceeds to disagree with the treatment provided. Further, even if Kabonick should have sutured Plaintiff's injury on the third occasion, when it appeared larger than the original injury, Plaintiff's claim at best rises to a claim of negligence, which also is not actionable. See Estelle, 429 U.S. at 106. There is no evidence contained in the record to even suggest that Defendant Kabonick was deliberately indifferent to any serious medical need of Plaintiff. Rather, the undisputed record demonstrates to the contrary as Plaintiff was seen and treated by Kabonick on three occasions on the date in question. As such, summary judgment will be entered on behalf of Defendants on the medical claim as well.

An appropriate Order is attached.

                                                   s/ Thomas I. Vanaskie
                                                   Thomas I. Vanaskie
                                                   United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RASHA A. BYNUM,                                :
                                               :
       Plaintiff,                         :   CIVIL NO. 3:CV-06-2272
                                               :
  vs.                                          :   (JUDGE VANASKIE)
                                               :
B. THIROWAY, et al.,                           :
                                               :
       Defendants.                        :

## O R D E R

     NOW, THIS 7th DAY OF JULY, 2008, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

       1.     Defendants' Second Motion for Summary Judgment (Dkt. Entry 39) is GRANTED.

       2.     The Clerk of Court is directed to enter judgment on behalf of all Defendants on all claims.

       3.     The Clerk of Court shall mark this matter CLOSED.

                                    s/ Thomas I. Vanaskie
                                      Thomas I. Vanaskie
                                      United States District Judge